IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| TONYA RANEE SCATES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:15-cv-00032 |
| | ) | |
| v. | ) | |
| | ) | |
| SHENANDOAH MEMORIAL | ) | By: Michael F. Urbanski |
| HOSPITAL, | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

In this case, Tonya Scates ("Scates") claims her former employer, Shenandoah Memorial Hospital ("SMH"), terminated her employment in retaliation for her complaints about false billing practices for ultrasound exams. Before the court is SMH's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 16. The matter has been fully briefed, and the court heard oral argument on September 23, 2015. For the reasons set forth below, the court finds that Scates has (1) failed to allege sufficient facts to state a prima facia case for retaliation under the False Claims Act, 31 U.S.C. § 3730(h) and (2) failed to state a plausible claim for wrongful termination under any of the three grounds recognized by Virginia law. Accordingly, the court will **GRANT** SMH's motion to dismiss. However, Scates is granted leave to file a second amended complaint within thirty (30) days to assert additional factual allegations against SMH on her retaliation claim under the False Claims Act only.

### I. Factual and Procedural Background

Plaintiff Tonya Scates worked as an ultrasound technician at SMH from February 2014 to January 27, 2015. Am. Compl., ECF No. 15, at ¶¶ 6, 37. Her duties included performing ultrasound exams. In October 2014, Scates attended a medical seminar that discussed billing procedures for

ultrasounds, which included information about the Current Procedural Terminology ("CPT") billing codes promulgated by the American Medical Association. Id. at ¶ 23. Based on this information, Scates believed that ultrasounds performed at SMH failed to meet the CPT billing standards, because technicians at SMH took fewer ultrasound photos than required by the CPT billing criteria. Id. Scates alleges that she "feared that SMH would face charges of fraud" by using billing codes that corresponded to full ultrasounds, when SMH's actual ultrasounds did not take enough pictures to qualify as full ultrasounds, especially for ultrasounds performed in the second and third trimesters. Id. at ¶ 25.

Sometime in October 2014, Scates claims she reported the "inconsistency" between SMH's ultrasound practices and the procedures required by the CPT codes to her supervisor at SMH, James Ziner ("Ziner"). Id. at ¶ 26. Ziner is the Radiology Director at SMH. Id. at ¶ 7. Scates claims she asked Ziner if SMH's ultrasound procedures were consistent with the codes used to bill for those procedures. Id. at ¶ 26. She followed up with Ziner in November 2014, and was told that he would "check on the situation." Id. at ¶ 34. Scates also spoke with a co-worker, Gayle Wellard, about her concerns. Id. at ¶¶ 28–29. Scates alleges that Wellard looked at the CPT code book and agreed that SMH's ultrasound procedures were insufficient to meet the CPT billing criteria. Id. at ¶ 29.

During the same time period, Scates was involved in a dispute with another co-worker, Laurice Corbitt ("Corbitt"). Corbitt also performed ultrasounds at SMH. Id. at ¶¶ 10–17. Scates alleges that Corbitt lacked the required training and certification to perform ultrasounds, and made several errors when examining patients at SMH. Id. Specifically, Scates claims that Corbitt used the Pulse Spectral Doppler ("PSD")—a tool used to perform ultrasound exams—at a setting that endangered the fetus and conducted an ultrasound exam on a patient who had had a partial hysterectomy. Id. at ¶¶ 14, 18–19. Scates reported her concerns anonymously to SMH in October 2014, around the same time she attended the seminar on ultrasound billing practices. Id. at ¶ 22.

2

Scates was told that SMH would take no action against Corbitt because it "would seem retaliatory given Corbitt's numerous [prior] complaints against Scates." Id. at ¶ 22.

On November 6, 2014, Scates met with Ziner, SMH Vice President Lisa Stokes, and SMH Human Resources Officer Debbie Campisi. Id. at ¶ 30. Ziner and Stokes gave Scates a "corrective action document" outlining several complaints filed by Corbitt against Scates. Id. at ¶ 31. Scates believes that Corbitt was filing false complaints against her with SMH, and was told by a co-worker that Corbitt would continue to file false complaints against her. Id. at ¶¶ 31–33.

In December 2014, Corbitt refused to meet with Scates after Ziner requested that the two employees meet to discuss the issues between them. Id. at ¶ 35. Scates filed another internal complaint against Corbitt in January 2015. Id. at ¶ 36. On January 27, 2015, Scates met again with Ziner and Stokes. Id. at ¶ 37. During this meeting, Ziner and Stokes "complimented" Scates's work, but informed her they were terminating her employment at SMH. Id. at ¶¶ 37–39.

Scates brought this suit in May 2015 alleging a claim for retaliation under the False Claims Act, 31 U.S.C. § 3730(h) ("FCA"), and a state-law wrongful termination claim. SMH filed a motion to dismiss the original complaint, which was denied as moot after Scates moved to amend her original complaint. An amended complaint was filed on June 17, 2015, and SMH re-filed its motion to dismiss.

## II. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter which, if accepted as true, "state[s] a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint is "facially plausible" when the facts alleged "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This "standard is not akin to a 'probability requirement,' but it asks for more than a

3

sheer possibility that a defendant has acted unlawfully." Id. When ruling on a motion to dismiss, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).

While the court must accept as true all well-pled factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see also Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments.") (internal quotation marks omitted). Thus, in order to survive a Rule 12(b)(6) motion, the complaint must present sufficient nonconclusory factual allegations to support a reasonable inference that the plaintiff is entitled to relief and the defendant is liable for the unlawful act or omission alleged. See Francis v. Giacomelli, 588 F.3d 186, 196–97 (4th Cir. 2009) (citing Iqbal, 556 U.S. at 678–79 and Gooden v. Howard Cnty., Md., 954 F.2d 960, 969–70 (4th Cir. 1992) (en banc)). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

### III. FCA Retaliation Claim

The whistleblower provision of the FCA prohibits retaliation against employees because of "lawful acts done . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h). To state a retaliation claim, Scates must allege that (1) she engaged in "protected activity," (2) that SMH knew about that activity; and (3) that SMH took action against her as a result. Glynn v. EDO Corp., 710 F.3d 209, 214 (4th Cir. 2013). On a motion to dismiss, her retaliation claim need only meet the pleading standard under

4

Federal Rule of Civil Procedure 8(a).  See Smith v. Clark/Smoot/Russell, 796 F.3d 424, 433 (4th Cir. 2015); Young v. CHS Middle East, LLC, 611 F. App'x 130, 132 (4th Cir. 2015).

SMH argues that Scates fails to state a plausible claim because she: (1) fails to allege facts showing that SMH actually committed fraud; (2) fails to show that her actions were protected activity under the FCA; and (3) fails to show that SMH was on notice that Scates was engaging in protected activity.  SMH does not contest the causation element of the retaliation claim.

### A. Actual Fraud by SMH

SMH first argues that Scates fails to state a plausible claim because she does not allege sufficient facts to show that SMH violated the FCA.  Relying primarily on Mann v. Heckler & Koch Defense, Inc., 630 F.3d 338 (4th Cir. 2010), and the text of § 3730(h), SMH argues that Scates must show that an FCA cause of action exists against SMH in order to state a prima facia case for retaliation.  Specifically, SMH notes that Scates did not allege that SMH submitted false ultrasound bills to Medicare or Medicaid, nor that the government paid any false bill submitted by SMH.  Where there are no specific allegations that a defendant submitted false claims, SMH believes there can be no "protected activity" under § 3730(h).  The court disagrees.

A plaintiff need not prove an underlying FCA violation to state a plausible claim for retaliation under the FCA.  Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson, 545 U.S. 409, 416 n.1 (2005).  In fact, § 3730(h) protects an employee's conduct "even if the target of an investigation or action to be filed was innocent." Id. at 416.  Instead, a plaintiff must only "evince some attempt to expose possible fraud" and provide "some suggestion of impropriety or illegality by the employer that the employee is attempting to uncover." U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co., 612 F.3d 724, 735 (4th Cir. 2010).

With this standard in mind, the court finds that Scates need not specifically allege that SMH submitted false bills to Medicaid or Medicare, nor that Medicaid or Medicare paid SMH in reliance

5

on false bills in order to survive a motion to dismiss on her FCA retaliation claim. Instead, she must only plead sufficient facts to make a plausible showing that her "protected activity" related to conduct that involved "an objectively reasonable possibility of an FCA action." Mann, 630 F.3d at 344. Scates can show such an objectively reasonable possibility without pleading the facts demanded by SMH. This finding is consistent with those of multiple other courts, including the district court in Mann. See Mann v. Heckler & Koch Def., Inc., No. 1:08-CV-611, 2008 WL 4551104, at *6 (E.D. Va. Oct. 7, 2008) (finding that the plaintiff sufficiently alleged "protected activity" even without evidence that the "alleged fraud . . . led to the authorization of payment of federal funds."); Clinkscales v. Walgreen Co., No. 8:10-CV-2290, 2012 WL 80543, at *4 n.1 (D.S.C. Jan. 11, 2012) ("To state an FCA retaliation claim, however, a plaintiff must show that he suspected that the defendant submitted a false claim, not that the defendant actually submitted one."); see also Hoyte v. Am. Nat. Red Cross, 518 F.3d 61, 69 (D.C. Cir. 2008) ("[I]t is true . . . that 'a well-pleaded retaliation complaint need not allege that the defendant submitted a false claim . . . .'") (internal citation omitted); Fed. Nat. Mortg. Ass'n v. K.O. Realty, Inc., No. 3:13-CV-2781-L, 2014 WL 3900619, at *4 (N.D. Tex. Aug. 8, 2014) ("To bring a retaliation claim under § 3730(h), a plaintiff does not need to allege or prove that the defendant submitted a false claim to the government; rather, a plaintiff need only allege retaliation by the defendant because the plaintiff engaged in protected activity.").

The court acknowledges that the Fourth Circuit's opinion in Mann contains language that, if taken out of context, might support SMH's argument. But this court does not read Mann as broadly as SMH would suggest. Mann simply re-affirms the long-standing rule that § 3730(h) protects a plaintiff who "succeed[s] in showing that his actions were aimed at conduct raising a distinct possibility of fraud against the United States." Mann, 630 F.3d at 350. Since the factual record in Mann was so devoid of facts showing that the defendant committed fraud—as opposed to violations of federal regulations—the Fourth Circuit found that the plaintiff could have had no

6

objectively reasonable belief that an investigation into his employer's activities would uncover fraud. Id. at 347. As such, the court affirmed the district court's entry of summary judgment for the defendant. Id. at 350. Under this reading of Mann, Scates need not allege that SMH actually submitted false bills to Medicare and Medicaid in order to survive a Rule 12(b)(6) motion. Rather, her allegations must only rise to the level of a distinct possibility of fraud. As outlined below, however, other defects in the amended complaint are fatal to Scates's retaliation claim.

### B. Protected Activity

SMH next alleges that Scates fails to show that she engaged in protected activity. Courts often consider the "protected activity" and "notice" elements together, as both elements rely on similar facts. See, e.g., Dillion v. SAIC, Inc., No. 1:12-CV-390, 2013 WL 324062, at *4 (E.D. Va. Jan. 28, 2013). However, the Fourth Circuit cautions against collapsing the two elements into a single inquiry in all cases. U.S. ex rel. Parks v. Alpharma, Inc., 493 F. App'x 380, 389–90 (4th Cir. 2012). In this case, the court will consider each element separately.

Congress expanded the definition of protected activity in 2009. Prior to 2009, protected activity included only acts done "in furtherance of an FCA claim." Young v. CHS Middle East, LLC, 611 F. App'x 130, 133 (4th Cir. 2015). Now, protected activity includes both acts done "in furtherance of an FCA claim" and "other efforts to stop one or more violations" of the FCA. Id. The Fourth Circuit has not yet defined the meaning of "other efforts to stop" FCA violations, but it has recognized that the amended statute "plainly encompasses" more activities than before. See Smith v. Clark/Smith/Russell, 796 F.3d 424, 433–34 (4th Cir. 2015).

To determine if an employee engaged in protected activity, the Fourth Circuit applies an objective, "distinct possibility" standard. See Mann, 630 F.3d at 344.; Layman v. MET Laboratories, Inc., No. 12-CV-2860, 2013 WL 2237689, at *7 (D. Md. May 20, 2013). Courts describe the distinct possibility standard in different ways. Some require that plaintiffs show they were investigating

7

"matters that reasonably could lead to a viable FCA action." Glynn v. EDO Corp., 710 F.3d 209, 214 (4th Cir. 2013). Others hold that protected activity "occurs when an employee's opposition to fraud takes place in a context where litigation is a distinct possibility, when the conduct reasonably could lead to a viable FCA action, or when . . . litigation is a reasonable possibility." Eberhardt v. Integrated Design & Const., Inc., 167 F.3d 861, 869 (4th Cir. 1999). Despite these slight differences, the general standard is clear: an employee's actions must "relate to company conduct that involves an objectively reasonable possibility of an FCA action." Mann, 630 F.3d at 344.

Examples of protected activity include internal reports submitted to an employer, see Glynn, 710 F.3d at 215, and conversations with employers that raise specific objections to fraud. See Fitzsimmons v. Cardiology Assocs. of Fredericksburg, Ltd., No. 3:15-CV-72, 2015 WL 4937461, at *6 (E.D. Va. Aug. 18, 2015). Further, protected activity can include an employee's initial investigation of possible fraud, even before that employee has "put all the pieces of the puzzle together." Mann, 630 F.3d at 343–44 (quoting U.S. ex rel. Yesudian v. Howard Univ., 153 F.3d 731, 740 (D.C. Cir. 1998)). However, where an employee voices ordinary concerns to his employer without some "suggestion of impropriety," the employer is "entitled to treat [that] suggestion for improvement as what it purports to be, rather than a precursor to litigation." U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co., 612 F.3d 724, 735 (4th Cir. 2010) (citing Lucky v. Baxter Healthcare Corp., 183 F.3d 730, 733 (7th Cir. 1999)). Voicing only general complaints to an employer—without more—is not protected activity. Id.

With this standard in mind, the court turns to the allegations in the amended complaint. The only "protected activity" alleged are two conversations between Scates and her supervisor Ziner. Thus, to show protected activity, Scates must allege sufficient facts to raise a plausible inference that there was an objectively reasonable possibility that these conversations were "in

8

furtherance of" an FCA suit or an "effort to stop" an FCA violation. See Mann, 630 F.3d at 345. Even under a broad reading of § 3730(h), the court finds that Scates has not met this burden.

In her amended complaint, Scates alleges that SMH used billing codes for full ultrasound exams, but had internal policies that required fewer sonograms than specified by the CPT billing guidelines. Am. Compl., ECF No. 15, at ¶¶ 23–25. She learned about this discrepancy in an off-site training seminar, which reported that the standard number of ultrasound images for certain CPT billing codes differed from the number of images taken by ultrasound technicians at SMH. Id. She spoke with one co-worker about her concern, and compared the CPT billing code book with SMH's internal policies. Id. at ¶¶ 28–29. She also spoke to Ziner, her supervisor, about her concerns on two occasions. Id. at ¶¶ 26, 34. During those meetings, Scates "expressed the inconsistencies between SMH's [ultrasound billing] practices and the CPT codes," and "inquired whether the billing code SMH was using to report ultrasounds was . . . consistent with the number of ultrasounds they were actually performing." Id. at ¶ 26. Scates does not allege that she told Ziner that she feared SMH was committing fraud.

These general conversations with Ziner fall short of any protected activity under § 3730(h). The amended complaint includes no facts to show that Scates complained of fraudulent or illegal practices by SMH. She only highlighted "inconsistencies" in billing practices, and never asked SMH to change its ultrasound policies, objected to these policies, nor mentioned her belief that SMH's billing policies might be illegal. To engage in protected activity, Scates must do more than raise broad questions or concerns about internal policies and procedures. Owens, 612 F.3d at 735. Instead, she must "invoke concerns of fraud" or make "some suggestion of impropriety or illegality by the employer." Id. On the face of her amended complaint, Scates alleges no facts that would show that her conversations with Ziner did anything more than communicate general apprehensions about ultrasound policies. This is not "protected activity" under § 3730(h).

9

At least two other courts have granted motions to dismiss on similar facts. See U.S. ex rel. Rector v. Bon Secours Richmond Health Corp., No. 3:11-CV-38, 2014 WL 1493568, at *13 (E.D. Va. Apr. 14, 2014) (dismissing claim where the plaintiff complained only of "shoddy or suspicious business practices" and possible violations of Medicare and Medicaid); U.S. ex rel. Davis v. Prince, No. 1:08-CV-01244, 2010 WL 2679761, at *4 (E.D. Va. July 2, 2010) (dismissing claim where the complaint "merely describes that [the plaintiff] questioned supervisors and was concerned about billing practices."); see also Dillon, 2013 WL 324062, at *5 (granting summary judgment for the defendant where "none of the actions taken by the plaintiff . . . consisted of more than expressions of concern or suggestion."). Further, cases that survive motions to dismiss contain more clear allegations of wrongdoing than found in Scates's amended complaint. See, e.g., Young, 611 F. App'x at 133 (reversing dismissal where plaintiffs told their employer that it was "defrauding" the government and contacted multiple supervisors to complain about potential illegal activities); Layman, 2013 WL 2237689, at *7–8 (denying motion to dismiss where plaintiff told multiple co-workers and a supervisor that test results were fraudulent, submitted a memo outlining the potential fraud, and refused to sign a final test report). Under this precedent, the court finds that Scates has failed to meet her burden on the first element of her cause of action.

To be sure, the meaning of protected activity under the amended language of § 3730(h) must be interpreted broadly, and can include an employee's initial investigation into possible fraud, even before the employee has a full appreciation for the scope of any wrongdoing. See, e.g., Young, 611 F. App'x at 132–33. Further, the court recognizes that some of the Fourth Circuit cases to analyze protected activity under § 3730(h) did so under the pre-2009 version of the FCA. However, the 2009 amendments to § 3730(h) did not overrule these prior cases, and they remain binding precedent in this circuit.

In many situations, it will be enough that a plaintiff made an internal report to her employer about fraudulent or illegal billing practices. See, e.g., U.S. ex rel. Parks v. Alpharma Inc., No. 06-2411, 2011 WL 1366491, at *6 (D. Md. Apr. 11, 2011), aff'd, 493 F. App'x 380 (4th Cir. 2012). Yet, even under a broad interpretation of § 3730(h), an internal report must raise some objective prospect that an employer is engaging in activities that would constitute a plausible violation of the FCA. It is not sufficient for an employee to offer oblique complaints "couched in terms of concerns or suggestions." See Dillon, 2013 WL 324062, at *5–7 (citing Parks, 493 F. App'x at 388–89). Otherwise, every internal complaint filed by an employee—no matter how unspecific or general—would qualify as "protected activity" under § 3730(h). As Scates fails to allege sufficient facts to show that she engaged in protected activity, she cannot state a plausible claim for retaliation under the FCA.

### C. Notice

SMH further argues that Scates fails to plead sufficient facts to show that SMH had notice of any protected activity. Scates must show that SMH had notice that she was engaging in conduct that might lead to a viable FCA claim. Glynn v. EDO Corp., 710 F.3d 209, 214 (4th Cir. 2013). If an employer has no notice that an FCA action is possible, it could not retaliate against an employee in violation of 31 U.S.C. § 3730(h). U.S. ex rel. Yesudian v. Howard Univ., 153 F.3d 731, 744 (D.C. Cir. 1998) (citing U.S. ex rel. Hopper v. Anton, 91 F.3d 1261, 1269 (9th Cir. 1996)).

The notice element is viewed from the employer's perspective, and "turns on whether the employer . . . is 'on notice that litigation is a reasonable possibility.'" Parks, 493 F. App'x at 388 (quoting Eberhardt v. Integrated Design & Constr., Inc., 167 F.3d 861, 868 (4th Cir.1999)). The Fourth Circuit has explained:

> [N]otice can be accomplished by expressly stating an intention to bring a qui tam suit, but it may also be accomplished by any action which a factfinder reasonably could conclude would put the employer on notice that litigation is a reasonable possibility. Such actions would

11

> include, but are not limited to, characterizing the employer's conduct
> as illegal or fraudulent or recommending that legal counsel become
> involved.

Eberhardt, 167 F.3d at 868.

For the same reasons Scates fails to show she engaged in protected activity, she also fails to state a plausible claim that SMH was on notice of her activities. It is undisputed that Scates raised only general concerns and questions during her two conversations with Ziner. She alleges no facts to show that she mentioned her belief that SMH might be committing fraud, nor that anything illegal was taking place. To be sure, Scates alleges elsewhere that she "presented her concerns [to Ziner] because SMH, as a recipient of Medicare and Medicaid funds, could be defrauding the federal government through incorrect billing." Am. Compl., ECF No. 15, at ¶ 27. But nowhere does she allege that she made statements to Ziner that were sufficiently suggestive of fraud, illegality, or anything resembling a potential FCA action. Her sole focus during these two conversations—at least as they are described in the amended complaint—was to question Ziner about potential discrepancies in billing codes at SMH and clarify whether SMH was performing ultrasound exams in a way that was consistent with the code used to bill for those exams. As noted above, Scates's limited conversations with Ziner were "clearly couched in terms of concerns and suggestions" and thus cannot not satisfy the notice requirement—just as they did not amount to protected activity in the first place. Cf. U.S. ex rel. Yesudian v. Howard Univ., 153 F.3d 731, 743 (D.C. Cir. 1998) (holding that "[m]erely grumbling to the employer about job dissatisfaction or regulatory violations" satisfies neither the protected activity element nor the notice element). Based on the facts alleged, Scates does not state a plausible claim that SMH had a reasonable belief that Scates was either contemplating a qui tam action or seeking to prevent a violation of the FCA.

In her opposition brief and again at oral argument, Scates claimed that she did tell Ziner that SMH was at risk of fraud charges. She also claimed, for the first time, that she mentioned billing

12

concerns to two other supervisors at SMH: Human Resource Officer Debbie Campisi and SMH Vice President Lisa Stokes. Pl.'s Mem. in Opp'n, ECF No. 18, at 3. However, none of these facts are alleged in the amended complaint.

For example, Scates alleges that she met with Ziner, Campisi, and Stokes on November 6, 2014. Am. Compl., ECF No. 15, at ¶ 30. But Scates states only that she discussed concerns about her co-worker, Laurice Corbitt, at this meeting. Id. at ¶¶ 31–32. She alleges no facts to show that she also raised billing concerns with Campisi and Stokes. The court cannot read facts into the amended complaint that are not there. Thus, for purposes of this motion, the court will only consider the allegations that appear on the face of Scates's amended complaint. Based on these facts, Scates fails to state a plausible claim that SMH had notice that litigation was a "reasonable possibility."

## IV. Claim for Wrongful Discharge

In addition to her FCA retaliation claim, Scates also brings a wrongful discharge claim under Virginia law. This state-law claim is based on her interactions with Corbitt, and Scates's complaints to SMH about Corbitt's lack of training and poor performance. Am. Compl., ECF No. 15, at ¶ 50. Scates claims her termination was related to these reports she made about Corbitt, which would violate state-law protections against unlawful termination. Id. at ¶¶ 45–55.

While the Commonwealth of Virginia adheres to the doctrine of employment-at-will, it recognizes three limited exceptions where termination of an employee can give rise to wrongful termination claims:

> (1) An employer violated a policy enabling the exercise of an employee's statutorily created right . . .
> (2) Where the public policy violated by the employer was explicitly expressed in a statute and the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy; [or] . . .
> (3) Where the discharge was based on the employee's refusal to engage in a criminal act.

13

Rowan v. Tractor Supply Co., 263 Va. 209, 214, 559 S.E.2d 709, 711 (2002).  These various exceptions to the employment-at-will doctrine are often collectively referred to as "Bowman claims" after Bowman v. State Bank of Keysville, 229 Va. 534, 331 S.E.2d 797 (1985), the first case in which the Virginia Supreme Court found that an employee's termination could violate public policy.  Id. at 710.

In her amended complaint, Scates appears to allege wrongful termination under all three exceptions recognized by Virginia law.  Am. Compl., ECF No. 15, at ¶¶ 53–55.  SMH notes, however, that Scates titled her wrongful discrimination claim as "wrongful termination for opposing or resisting criminal conduct."  Id. at 9.  SMH argues that this wording should limit Scates's claim to only the third exception for wrongful termination, an employee's refusal to engage in a criminal act.  The court need not resolve this dispute, since Scates fails to state a claim under any of the three exceptions.

### A. Exercise of a Statutorily Created Right

Under the first exception, Scates alleges that her termination violated a policy enabling her to exercise a statutorily created right.  She argues that she had a right to report Corbitt for violating hospital procedures and endangering patients.  In support, she cites to Va. Code § 54.1-2915(A)(12-13) and Va. Code § 54.1-100.  Section 54.1-2915(A) gives the Virginia Board of Medicine the authority to reprimand and refuse certification to certain medical professionals who endanger patient safety.  Subsection 54.1-2915(A)(12) authorizes the Board to discipline any party who "conduct[s] his practice in a manner contrary to the standards and ethics of his branch of the healing arts," while subsection 54.1-2915(A)(13) provides the same authority where a party "conduct[s] his practice in such a manner as to be a danger to the health and welfare of his patients or to the public."  In contrast, Va. Code § 54.1-100 is enabling legislation that authorizes the Commonwealth to create laws that regulate professions which pose a danger to the "health, safety, or welfare of the public."

The court finds that none of the statutes cited by Scates give her a statutory right to file internal complaints against Corbitt, or otherwise report behavior she finds objectionable to SMH. First, Va. Code §§ 54.1-2915(A)(12) and (A)(13) give the Virginia Board of Medicine authority to regulate medical professionals, but do not confer any statutory right on ultrasound technicians like Scates. Likewise, Va. Code § 54.1-100 speaks only to the authority of the state to regulate specific professions. This statute also confers no rights on Scates, nor does it impose a duty on her to report Corbitt's behavior to SMH. Further, Scates cites no Virginia or Fourth Circuit case to support her argument, and the court is not aware of any case holding that either of these statutes can give rise to a wrongful termination claim. Since Virginia recognizes no "generalized, common-law whistleblower retaliatory discharge claim," see Dray v. New Mkt. Poultry Products, Inc., 258 Va. 187, 191, 518 S.E.2d 312, 312–13 (1999), and Scates can identify no statutory right relevant to her claim, the court finds that she fails to meet the first exception to Virginia's employment-at-will doctrine.

### B. Violation of a Public Policy Expressed in a State Statute

Scates also alleges that her termination violates public policy. In support, she again cites Va. Code §§ 54.1-2915(A)(12–13) and Va. Code § 54.1-100. Scates claims these statutes were enacted to protect the public, that she attempted to protect the public when she reported Corbitt, and that her termination thus violates public policy. The court disagrees.

A plaintiff bringing a wrongful termination claim under the second exception must show that her termination violated "established public policy" and that he was a "member of the class of persons that the specific public policy was designed to protect." Mitchem v. Counts, 259 Va. 179, 189, 523 S.E.2d 246, 251 (2000). To qualify as a member of the class of persons protected by a statute, a plaintiff typically must show that the statute imposed a duty on her to perform the act that

15

led to her termination, or that she would be the victim of a putative violation of that statute. See Anderson v. ITT Indus. Corp., 92 F. Supp. 2d 516, 522 (E.D. Va. 2000).

With respect to Va. Code § 54.1-2915(A), Scates claims that this statute represents an established public policy to protect the general public. However, no court has ever applied § 54.1-2915(A) to support a wrongful termination claim under this theory. More importantly, Scates provides only scant evidence that she a member of the class of persons that this alleged public policy was designed to protect. Section 54.1-2915(A) applies to licensed medical professionals regulated by the Virginia Board of Medicine. See Va. Code § 54.1-2900 (2015). Ultrasound technicians like Scates do not appear amongst the various medical professions described in § 54.1-2900. While Scates claims that ultrasound technicians should be classified as "radiologic technologists"—a profession which is regulated by § 54.1-2900—she offers no facts to prove this.[1] More importantly, § 54.1-2915(A) imposes no duty on Scates to report co-worker performance violations to her supervisors, and Scates could never be the "victim" of any violation of § 54.1-2915(A)(12) or (A)(13). As such, she cannot be a member of the class of persons the statute was meant to protect. See Anderson, 92 F. Supp. 2d at 522.

Likewise, Scates's claim fails under Va. Code § 54.1-100. Section 54.1-100 addresses the Commonwealth's authority to regulate certain professions. However, even assuming that § 54.1-100 represents an established public policy to protect the general public, Scates, as an ultrasound technician, is not within the "protective reach" of this statute because she "is not within the public group of [patients] the statute seeks to protect from unregulated professions or occupations." See Lucker v. Cole Vision Corp., No. 7:05-CV-00126, 2005 WL 2788882, at *8 (W.D. Va. Oct. 26, 2005) (dismissing wrongful termination suit where licensed optician failed to show he was the within the

---

[1] Scates does have a Certificate in Radiologic Science from the Winchester Medical Center School of Radiologic Technology. However SHM notes that ultrasound technicians could never be classified as radiologic technologists because ultrasounds utilize sound waves, not radiation. Def.'s Reply, ECF No. 19, at 19.

16

class of persons protected by § 54.1-100). Further, this court once again could find no case in which a plaintiff successfully used § 54.1-100 as the statutory basis to support a wrongful termination claim under the theory proposed by Scates. Thus, the court finds that Scates fails to meet the second exception to Virginia's employment-at-will doctrine.

### C. Refusal to Engage in Criminal Conduct

Scates finally alleges that her termination violates public policy because the discharge was based on her refusal to engage in a criminal act. To prove this claim, Scates "must show that [s]he could have been prosecuted under Virginia criminal law had [s]he engaged in the conduct encouraged by the employer." See, e.g., Twigg v. Triple Canopy, Inc., No. 10-CV-122, 2010 WL 2245511, at *3 (E.D. Va. June 2, 2010). Scates claims she was terminated because she warned SMH about Corbitt's "dangerous ultrasound practices" and lack of training, and that SMH terminated her because of "her opposition to [SMH's] practices endangering patient care." Pl.'s Mem. in Opp'n, ECF No. 18, at 12–13.

However, the amended complaint never alleges that Scates was asked to engage in illegal conduct, nor cites a criminal statute relevant to her claim. Because Scates fails to allege any facts to show that SMH asked or directed her to commit criminal acts, her termination could not be related to her refusal to commit a crime. See Storey v. Patient First Corp., 207 F. Supp. 2d 431, 453 (E.D. Va. 2002). As such, Scates cannot meet the third exception to Virginia's employment-at-will doctrine. Since Scates fails to state a plausible claim for wrongful termination claim under any of the three exceptions provided by Virginia law, SMH's motion to dismiss this claim is **GRANTED**.

### V. Leave to Amend

In light of the court's conclusion that Scates fails to state a plausible claim for retaliation under the FCA and for wrongful termination under state law, it must now consider whether to grant leave for Scates to amend her complaint. Scates was already granted leave to file one amended

17

complaint. ECF No. 14. At argument, Scates's counsel requested leave to file a second amended complaint if the court found the first amended complaint failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). With respect to the FCA claim, counsel also identified specific facts she would allege in the second amended complaint that would address the very concerns this court has raised.

Under Federal Rule of Civil Procedure 15(a), a court should "freely give leave [to amend] when justice so requires." Id. Further, after dismissing a claim under Rule 12(b)(6), a court will "normally will give [a] plaintiff leave to file an amended complaint" because of the general preference to "decid[e] cases on the basis of the substantive rights involved rather than on [pleading] technicalities." Ostrzenski v. Seigel, 177 F.3d 245, 252–53 (4th Cir. 1999). A court may deny leave to amend, however, where the proposed supplement is "clearly insufficient or frivolous on its face." Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 200 (4th Cir. 2014) (internal citation omitted). For example, an amendment is futile where the amended pleading could not survive a motion to dismiss. See Perkins v. United States, 55 F.3d 910, 917 (4th Cir. 1995); Miller v. Jack, No. 1:06-CV-64, 2007 WL 1169179, at *1 (N.D.W. Va. Apr. 19, 2007).

Based on the representations of counsel during argument, the court will grant leave to amend, but only with respect to Scates's claim under the FCA to allow her the opportunity to allege additional facts to state a plausible claim for retaliation. No amendment will be permitted as to Scates's state-law claim for wrongful discharge. The legal theories Scates offers to support her state-law claim are not cognizable under Virginia law, and the court finds that any amendment would be futile.

**VI**.

For the reasons set forth above, the court will **GRANT** SMH's motion to dismiss, ECF No. 16. The court **DISMISSES WITH PREJUDICE** Scates's claim for wrongful termination under

18

Virginia state law.  The court **DISMISSES WITHOUT PREJUDICE** Scates's claim for retaliation under 31 U.S.C. § 3730(h), and grants her leave to file a second amended complaint within thirty (30) days to assert additional allegations against SMH on her FCA retaliation claim only.

An appropriate Order will be entered.

Entered:  October 16, 2015

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States District Judge